# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# BEAUMONT DIVISION

––––––––––

No. 1:09-CV-142

––––––––––

L. J. DOUCET and PAT DOUCET

                                        Plaintiffs

v.

STATE FARM FIRE AND CASUALTY
COMPANY and BILL NICKUM

                                        Defendants

––––––––––––––––––

Memorandum Opinion Re Motion to Remand

––––––––––––––––––

This opinion addresses plaintiffs' motion to remand this case to the 163rd Judicial District Court of Orange County, Texas.

## I.  Magistrate Judge Authority

This action is assigned to Hon. Ron Clark, United States District Judge, who referred pretrial matters to the undersigned magistrate judge by an Order of Reference entered on February 25, 2009.  A threshold question is whether a motion to remand is a pretrial matter not dispositive of a party's claim or defense that magistrate judges may hear and decide pursuant to 28 U.S.C. § 636 (b)(1)(A) or (3).

Lower courts are split on this question,[1] and there is no definitive ruling from the governing United States Court of Appeals for the Fifth Circuit. But, in a recent case, the Fifth Circuit voiced no objection to a magistrate judge's ruling on a remand motion when the presiding district judge considered the aggrieved party's objection.[2] Since the parties here will have an opportunity to secure district-judge review of any perceived errors or defects in the order,[3] the undersigned elects to decide the motion rather than issue a more cumbersome recommendation for its disposition.

## II.  Nature of Dispute; Proceedings to Date

### A.  *Factual Background*

Plaintiffs, L.J. and Pat Doucet, are residents and domiciliaries of Bridge City, Orange County, Texas.  Their home was damaged extensively by flood waters associated with "Hurricane Ike" which struck the Bridge City area causing widespread devastation on September 13, 2008.

---

[1]  Compare Saxon v. Thomas, No. 06-2339, 2007 WL 1974914, at *2 (W.D. La. June 29, 2007), Robinson v. Cheetah Transp., No. Civ. A. 06-0005, 2006 WL 1453036, at *1 (W.D. La. May 17, 2006), Vaquillas Ranch Co. v. Texaco Exploration & Prod., Inc., 844 F. Supp. 1156, 1160-63 (S.D. Tex. 1994), and City of Jackson v. Lakeland Lounge of Jackson, Inc., 147 F.R.D. 122, 124 (S.D. Miss. 1993) (holding that motions to remand are not dispositive and, consequently, may be referred to a United States magistrate judge for determination), with First Union Mortgage Corp. v. Smith, 229 F.3d 992, 996 (10th Cir. 2000), and In re U.S. Healthcare, 159 F.3d 142, 146 (3d Cir. 1998) (both holding that inasmuch as remand orders banish litigants from federal court, they are equivalent to final decisions or dispositive actions that must ultimately be performed by a district judge).

[2]  In re 1994 Exxon Chem. Fire, 558 F.3d 378, 382-83 (5th Cir. 2009).

[3]  See Fed. R. Civ. P. 72.

The Doucets' home was covered by a Standard Flood Insurance Policy ("SFIP")[4] issued and insured by defendant State Farm Fire and Casualty Company ("State Farm"). The Doucets purchased their policy from State Farm's agent, defendant Bill Nickum. State Farm is a citizen of Illinois, and Nickum is a citizen of Orange County, Texas.

The Doucets originally applied for flood insurance through Nickum, and purchased a flood policy directly from the United States government in 1985.[5] A renewal policy, purchased from Nickum in 1986, was issued by State Farm as a private "Write Your Own" carrier ("WYO").[6] Since then, State Farm "administered" the Doucets' policy. The Doucets typically renewed their State Farm policy annually by mail.

In August, 2007, the Doucets personally contacted Nickum to obtain *additional* flood coverage on their home. The Doucets thought that obtaining additional coverage was prudent because they had performed extensive

---

[4] SFIPs are provided through the National Flood Insurance Program ("NFIP" or the "Program"), which is administered by the Federal Emergency Management Agency ("FEMA"). <u>Wright v. Allstate Ins. Co.</u>, 415 F.3d 384, 385-86 (5th Cir. 2005); 42 U.S.C. § 4011(a) (2006). Congress enacted the National Flood Insurance Act of 1968 ("NFIA"), 42 U.S.C. § 4001, *et seq.*, "to make flood insurance available on reasonable terms and to reduce fiscal pressure on federal flood relief efforts." <u>Campo v. Allstate Ins. Co.</u>, 562 F.3d 751, 754 (5th Cir. 2009).

[5] <u>See</u> (Joint Report, Docket No. 30).

[6] SFIPs can be issued directly by FEMA or through private insurers (such as State Farm) known as "Write Your Own" companies. <u>Gowland v. Aetna</u>, 143 F.3d 951, 953 (5th Cir. 1998). "Under this framework, the federal government underwrites the policies and private WYO carriers perform administrative functions including 'arrang[ing] for the adjustment, settlement, payment and defense of all claims arising from the policies.'" <u>Campo</u>, 562 F.3d at 754 (<u>quoting</u> <u>Gallup v. Omaha Prop. & Cas. Ins. Co.</u>, 434 F.3d 341, 342 (5th Cir. 2005)).

renovations.[7] As a result of this contact with Nickum, coverage on the structure of their home was increased from $57,000 to $145,000.[8] This new, increased limit applied to the 2008 hurricane loss.

The Doucets allege that from inception of their flood insurance coverage in 1985 through the date of loss in 2008, their home was classified as being within "Flood Zone 'A,'" a "Special Hazard Flood Zone Area."[9] The Doucets contend that SFIPs for homes within such zone carry significantly higher premiums than SFIPs for homes in other zones. Under the expensive Zone A rates, they could afford to purchase only protection against flood-related *structural* damage. Thus, their original and all subsequent renewal policies did not provide coverage for the *contents* of their home.

After their hurricane loss in 2008, and during the process of submitting a claim to State Farm, the Doucets determined that their property actually is – and always has been – within the geographic boundaries of Flood Zone "C." Flood Zone C policies have much lower premiums, and usually qualify for "Preferred Risk Policy" status.[10] The Doucets allege that had their home been properly classified in Flood Zone C, they could have afforded and would have purchased additional coverage for both contents and structure.

---

[7]     See (Pl.'s Reply to Def.'s Various Mots. in Opp'n to Pl.'s Mot. to Abstain and Remand, May 29, 2009, Docket No. 37).

[8]     Id.

[9]     Under the NFIA, FEMA is required to "identify and map the nation's flood-prone areas and establish flood-risk zones." Cure v. Louisiana Farm Bureau Cas. Ins. Co., No. 06-5207, 2007 WL 4563449, at *1 (E.D. La. Dec. 21, 2007). These maps are used to set premiums and policy limits for flood insurance. Id.

[10]     Property within Flood Zone C is considered at low-risk for flooding. Cure, 2007 WL 4563449, at *1. Designation of property within Flood Zone C entitles a homeowner to obtain a "Preferred Risk Policy" in most situations. Id. Property located within a "Special Flood Hazard Area," however, is ineligible for a Preferred Risk Policy. Id.

The Doucets fault Nickum for not noticing, disclosing and correcting the erroneous flood zone classification when they approached him to obtain additional coverage in 2007.  They contend that Nickum is liable in tort under several common law and statutory causes of action: negligence, breach of fiduciary duty, fraud, fraudulent concealment, negligent misrepresentation, and violations of the Texas Insurance code ("TIC") and Deceptive Trade Practices-Consumer Protection Act ("DTPA").[11]  The Doucets contend that State Farm likewise is liable vicariously for wrongful acts of its agent, Nickum, under agency principles and the doctrine of *respondeat superior*.

### B.    Proceedings

The Doucets instituted suit against Nickum and State Farm in the 163rd Judicial District Court of Orange County, Texas, on December 30, 2008.  In addition to pleading most of the causes of action described in the preceding paragraph, they also asserted causes of action for breach of the insurance contract, negligent hiring, supervision and/or management, and breach of the duty of good faith and fair dealing as bases for recovery.

State Farm, joined by Nickum, removed the action to this federal court on January 30, 2009. As grounds for removal, State Farm claimed that this court has original jurisdiction over the Doucets' claims in several respects: (1) "original exclusive jurisdiction" under 42 U.S.C. § 4072;[12] (2) general federal question

---

[11]    See (Am. Compl., Docket No. 35).

[12]    Title 42 U.S.C. § 4072 provides in part as follows:

[T]he Director [of FEMA] shall be authorized to adjust and make payment of any claims for . . . losses covered by flood insurance, and upon the disallowance by the Director of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing
(continued...)

jurisdiction under 28 U.S.C. § 1331; and (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332. Regarding diversity jurisdiction, State Farm asserted that its citizenship is diverse from the Doucets; that Nickum was improperly joined as a defendant; that, consequently, his Texas citizenship should be disregarded; and that complete diversity exists between plaintiffs and State Farm, the sole remaining defendant. Finally, State Farm asserted that this court also has supplemental jurisdiction over any claims governed by state law under 28 U.S.C. § 1367.

On February 13, 2009, the Doucets filed a timely motion to remand. Thereafter, they obtained new counsel who prepared and filed an amended federal complaint. The amended complaint deleted breach of contract as a basis for the defendants' proposed liability. It also expressly disclaimed any right to recover overcharged premiums. Finally, it added more specific factual allegations regarding alleged errors and omissions of Nickum.

The court received written briefs, and also heard oral arguments on plaintiffs' motion to remand at a hearing on July 7, 2009.

C.    *Plaintiffs' Motion to Remand*

The Doucets assert that this action must be remanded because this court lacks subject-matter jurisdiction. While arguments (on both sides) evolved during briefing and oral arguments, the Doucets ultimately advance two

---

[12](...continued)
of notice of disallowance or partial disallowance by the Director, may institute an action . . . on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.

42 U.S.C. § 4072 (emphasis added).

principal points. First, they argue that their voluntary elimination of a breach of contract claim removed any basis for federal-question jurisdiction. Second, they argue that complete diversity of citizenship between all plaintiffs and defendants does not exist because defendant Nickum, like the Doucets, is a citizen of Texas. On this point, they contend that Nickum was properly joined because (a) Texas law recognizes causes of action they assert against Nickum, and (b) their pleadings adequately allege such claims. Since neither a federal question nor complete diversity of citizenship exists, they argue that the court lacks jurisdiction.

State Farm and Nickum oppose on multiple grounds. Primarily, they argue that, even if "original exclusive jurisdiction" under 42 U.S.C. § 4072 disappeared by virtue of the amended federal complaint, general federal question jurisdiction remains under 28 U.S.C. § 1331. Essentially, this argument boils down to an assertion that *all* of the Doucets' remaining causes of action premised on Texas state law are preempted by federal law. These defendants rely on Wright v. Allstate Ins. Co., 415 F.3d 384, 390 (5th Cir. 2005) and on FEMA regulations[13] for the proposition that federal law preempts state law tort claims arising from claims handling and what they characterize as policy "administration" by a WYO carrier.

---

[13]    Defendants primarily rely on:

1.    An arrangement between WYO carriers and FEMA, which provides that "Any litigation resulting from, related to, or arising from the companies' compliance with the written standards, procedures, and guidance issued by FEMA or FIA arises under the Act, regulations, or FIA guidance, and legal issues thereunder raise a federal question." 44 C.F.R. Pt. 62, App. A, Art. I.

2.    A 2000 amendment to the SFIP explicitly stating: "This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by FEMA, the National Flood Insurance Act of 1968 . . . and Federal common law." 44 C.F.R. pt. 61, app. A(1), art. IX.

The Doucets reply that their remaining state law claims are not preempted because they arise out of their 2007 attempt to *procure* additional flood insurance. The Doucets rely on a recent Fifth Circuit case wherein a divided panel concluded that federal law does not preempt state-law tort claims against WYO carriers arising from flood policy procurement. See Campo v. Allstate Ins. Co., 562 F.3d 751, 757-59 (5th Cir. 2009). The Doucets further rely on a federal district court case, Landry v. State Farm Fire & Cas. Co., 428 F. Supp.2d 531, 532 (E.D. La. 2006), which on arguably analogous facts concluded that state-law claims were not preempted. Landry, plaintiffs argue, is authoritative because its analytical approach to determining when insurance agent actions are procurement-related was expressly approved in Campo.

At oral argument, opposing counsel debated at length the proper interpretation of Campo. State Farm's counsel advised that the hearing was the first "post-Campo" dispute ripe for decision, and that the issue has been raised, or is expected to be raised, in numerous other actions. Thus, the substantive preemption issue is of immense practical importance to both WYO carriers and present and future flood damage claimants.

III.   Discussion and Analysis

Should the parties prove themselves unable or unwilling to resolve their dispute amicably and extra-judicially, the court's interpretation of Campo in light of the alleged facts undoubtedly will be a "game changer." Judicial interpretation of the substantive preemption issue is unnecessary at this

juncture, however, because the Doucets' motion to remand readily can be resolved on alternative, well-settled principles of law.[14]

Removal of this action from state to federal court clearly was appropriate because the Doucets' "live" state-court petition at the time of removal asserted a breach of contract claim over which this federal court has "original jurisdiction" under 28 U.S.C. § 1331. <u>Studio Frames Ltd. v. Standard Fire Ins. Co.</u>, 369 F.3d 376, 380 (4th Cir. 2004); <u>Newton v. Capital Assur. Co., Inc.</u>, 245 F.3d 1306, 1309 (11th Cir. 2001). Section 4072 of Title 42, United States Code, also vests federal district courts with original exclusive jurisdiction over suits by claimants against WYO companies. <u>Gallup v. Omaha Prop. & Cas. Ins. Co.</u>, 434 F.3d 341, 342-43 (5th Cir. 2005); <u>Van Holt v. Liberty Mut. Fire Ins. Co.</u>, 163 F.3d 161, 167 (3d Cir. 1998). Simultaneously, the court acquired supplemental jurisdiction over any state law claims. <u>See</u> 28 U.S.C. § 1367. Therefore, the Doucets' motion to remand on the basis of complete lack of subject-matter jurisdiction must fail.

A.    *The Amendment*

The Doucets' post-removal, amended federal complaint deleted their breach of contract claim, and also expressly waived recovery of overcharged premiums. In the Doucets' view, these were their only demands governed by federal law. Therefore, the Doucets argue that federal-law jurisdiction ceased to exist.

The amended federal complaint – construed in the manner advocated by the Doucets – did not destroy federal jurisdiction. A plaintiff's voluntary

---

[14]    See <u>Kyllo v. U.S.</u>, 533 U.S. 27, 41-42, 121 S. Ct. 2038, 2047 (2001) ("There is no need for the Court to craft a new rule to decide this case, as it is controlled by established principles. . . ."); <u>see</u> <u>also</u> <u>Winkelman ex rel.</u> <u>Winkelman v. Parma City School Dist.</u>, 550 U.S. 516, 518, 127 S. Ct. 1994, 1997 (2007).

amendment to a complaint after removal to eliminate the federal claim upon which removal was based does not defeat federal jurisdiction. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357, 108 S. Ct. 614, 98 L. Ed.2d. 720 (1988); Lone Star OB/GYN Assocs. v. Aetna Health, Inc., —F.3d—, No. 08-50646, 2009 WL 2501340, at *1 (5th Cir. Aug. 18, 2009) (citing Henry v. Indep. Am. Sav. Ass'n, 857 F.2d 995, 998 (5th Cir. 1988)); Boelens v. Redman Homes, Inc., 759 F.2d 504, 507 (5th Cir. 1985).[15] Rather, the court *retains* supplemental jurisdiction over remaining state law claims, subject to its discretion. See Cohill, 484 U.S. at 357; Lone Star OB/GYN Assocs., 2009 WL 2501340, at *1; Henry, 857 F.2d at 998; see also 28 U.S.C. § 1367(c).[16]

## B.  *Diversity Jurisdiction*

When assessing whether diversity jurisdiction exists, a court must disregard non-diverse citizenship of an improperly joined defendant. Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 572-73 (5th Cir. 2004). A removing defendant who contends that a non-diverse party is improperly joined has a "heavy" burden of proof.[17] Such burden is not impossible, however, and can be

---

[15]    See also ConnectU, LLC v. Zuckerberg, 522 F.3d 82, 92 n.8 (1st Cir. 2008); Behlen v. Merrill Lynch, 311 F.3d 1087, 1095 (11th Cir. 2002); Bentley v. Tarrant County Water, 66 F.3d 319 n.4 (5th Cir. 1995); Grynberg Prod. Corp. v. British Gas, P.L.C., 149 F.R.D. 135, 137 (E.D. Tex. 1993); Baylor Univ. Med. Ctr. v. W. Growers Assurance Trust, No. 3:02-CV-1872, 2003 WL 21528676, at *2 (N.D. Tex. July 3, 2003).

[16]    The Doucets premise their motion on a complete absence of subject-matter jurisdiction. They do not seek a discretionary remand. Further, an alternative basis for federal jurisdiction exists, viz., diversity of citizenship. See discussion infra, Section III.B. Therefore, amending the motion to seek discretionary remand would be pointless.

[17]    A removing party's burden of proving a fraudulent or improper joinder is a heavy one. Green v. Amerada Hess Corp., 707 F.2d 201, 205 (5th Cir. 1983); B., Inc., v. Miller Brewing Co., 663 F.2d 545 (5th Cir. 1981). "In making its determination, the court must ordinarily evaluate all of the factual allegations in the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff." Id.; B., Inc., 663 F.2d at 549.

satisfied in more ways than one. <u>Smallwood</u>, 385 F.3d at 572-73. One means is to demonstrate a plaintiff's inability to establish a cause of action against the non-diverse party in state court. <u>Id.</u> at 573 (<u>citing</u> <u>Travis v. Irby</u>, 326 F.3d 644, 646-47 (5th Cir. 2003)).

Under this method, joinder is deemed improper or collusive when "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." <u>Smallwood</u>, 385 F.3d at 573. To assess this issue, federal district courts conduct an analysis under Rule 12(b)(6), Federal Rules of Civil Procedure, to determine whether a plaintiff's state-court petition stated a cause of action upon which relief can be granted against the in-state defendant. <u>Id.</u> In so doing, the court is obligated to confine its analysis to the state-court petition in existence at the time of removal. <u>See</u> <u>Campbell</u>, 509 F.3d at 669 n.2; <u>Manguno v. Prudential Prop. & Cas. Ins. Co.</u>, 276 F.3d 720, 723 (5th Cir. 2002); <u>Griggs</u>, 181 F.3d at 700; <u>Cavallini v. State Farm Mut. Auto Ins. Co.</u>, 44 F.3d 256, 263 (5th Cir. 1995).

Merely asserting a state law claim whose validity against a resident defendant is arguable is not enough. <u>Hornbuckle v. State Farm Lloyds</u>, 385 F.3d 538, 542 (5th Cir. 2004). Even when plaintiffs identify causes of action arguably recognized by state law, defendants can defeat remand by showing that state-court petitions failed to allege "specific actionable conduct" sufficient to support the causes of action asserted against non-diverse defendants. <u>Griggs v. State Farm Lloyds</u>, 181 F.3d 694, 699 (5th Cir. 1999). Ultimately, "whether the plaintiff has stated a valid state law cause of action *depends upon* and is *tied to* the *factual fit* between the plaintiffs' allegations and the pleaded theory of recovery." <u>Id.</u> at 700 (emphasis added).

Recent Supreme Court decisions clarify what a factual fit is. A complaint must aver sufficient *factual matter* which, if accepted as true, states a claim to relief that is plausible on its face. <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009). The general tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare or formulaic recitals of a cause of action's elements, supported by mere conclusory statements. <u>Bell Atl., Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed.2d 929 (2007) (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986)). Thus, to state a cognizable claim, a petition must show more than a *theoretical* possibility of recovery by pleading specific *facts* that would establish that defendant's liability. <u>Kling Realty Co., Inc. v. Chevron USA, Inc.</u>, No. 08-30043, 2009 WL 1976027, at *2 (5th Cir. July 10, 2009) (quoting <u>Campbell v. Stone Ins., Inc.</u>, 509 F.3d 665, 669 (5th Cir. 2007); <u>Smallwood</u>, 385 F.3d at 573; <u>Ross v. Citifinancial, Inc.</u>, 344 F.3d 458, 462 (5th Cir. 2003).

Pleaded *factual content* must be sufficient to allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. <u>Ashcroft</u>, 129 S. Ct. at 1949. Pragmatically, this means that the state-court petition must allege facts sufficient to establish the essential elements of each asserted cause of action. Cf. <u>Tuchman v. DSC Communications Corp.</u>, 14 F.3d 1061, 1067 (5th Cir. 1994); <u>see</u>, <u>e.g.</u>, <u>Chemtreat, Inc. v. Chemtech Chem. Servs., LLC</u>, No. 1:07-CV-147, 2007 WL 4353420, at *5 (E.D. Tex. Dec. 7, 2007); <u>Omda Oil and Gas, Inc. v. Young Oil, Corp.</u>, No. 3:06-CV-439M, 2006 WL 1343640, at *2 (N.D. Tex. May 17, 2006). Further, merely lumping diverse and non-diverse defendants together in undifferentiated liability averments of a petition does not satisfy the requirement to state *specific actionable conduct* against the non-diverse defendant. <u>See</u> <u>Griggs</u>, 181 F.3d at 699. Similarly, it inevitably follows

that merely asserting a laundry list of statutory violations without factual support as to *how* a non-diverse defendant violated the statute will not suffice.

Given these rigorous requirements, the court must conclude that State Farm carries its burden to demonstrate that there is no reasonable basis for the court to predict that the Doucets may be able to recover against Nickum. First, the Doucets' state-court petition alleges numerous contractual and extra-contractual causes of actions against "Defendants" *collectively*, triggering the Griggs deficiency. Second, the state-court petition asserts causes of action against Nickum that may only be asserted against State Farm, viz., negligent hiring, supervision, and/or management, breach of the duty of good faith and fair dealing, and breach of contract. This suggests that Nickum may have been named as a defendant for tactical convenience to defeat federal jurisdiction.

Third, and perhaps most importantly, the *only* factual averment of specific conduct on the part of Nickum in the entire state petition is:

> A determination was made by State Farm *and its agent Bill Nickum* that the Doucets' home was in flood zone "A."

See (Original Pet., Docket No. 1-2) (emphasis added). This single allegation – made against both defendants without differentiation as to who did what – does not in any event allege facts, which, when proven, would establish each essential element of the armada of state-law causes of action advanced against non-diverse defendant Nickum.

The Doucets' amended *federal* complaint contains more specific factual allegations. These allegations (or future amendments) may withstand subsequent Rule 12(b)(6) challenges. But, they cannot be considered in the

*jurisdictional* analysis. The court is not free to re-examine its diversity jurisdiction on the basis of a post-removal amendment of the complaint. Rather, improper joinder analysis is confined to an inspection of the *state* petition which existed at the time of removal.

## IV. Conclusion

State Farm successfully invoked this court's federal-question, diversity and supplemental jurisdiction when removing this action from state court. The Doucets' post-removal amended federal complaint, while arguably eliminating federal claims, does not defeat jurisdiction. Further, State Farm carried its burden to show that defendant Nickum was improperly joined (such that the court must ignore his non-diverse citizenship) and that State Farm's citizenship is diverse. Consequently, the court also has diversity jurisdiction.

The motion to remand for lack of subject-matter jurisdiction must be denied. An appropriate order will be entered separately.

**SIGNED** this __25__ day of September, 2009.

_Earl S. Hines_
Earl S. Hines
United States Magistrate Judge